IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY L. RETZLAFF,

                    Plaintiff,

    v.

CITY OF CUMBERLAND and
OFFICER JOHN SMITH,

                  Defendants.

OPINION and ORDER

09-cv-692-slc

---

On January 5, 2007, defendant John Smith, a police officer for defendant City of Cumberland, Wisconsin, performed a traffic stop of plaintiff Jeffrey Retzlaff's van and arrested Retzlaff for speeding, possession of marijuana and driving with a detectable amount of a restricted controlled substance in his blood system. A post-arrest blood test came back clean. Retzlaff subsequently filed this lawsuit pursuant to 42 U.S.C. § 1983, contending that defendants Smith and City of Cumberland violated his rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. Jurisdiction is present under 28 U.S.C. § 1331 and § 1343.

Now before the court is defendants' motion for summary judgment, dkt. 12. Because there is no evidence that defendant Smith violated Retzlaff's constitutional rights, I am granting defendants' motion.

I note at the outset that Retzlaff put himself in a deep hole on this one by failing to comply with the court's summary judgment procedures, a copy of which was attached to the pretrial conference order, dkt. 5. As explained in those procedures, a party opposing summary judgment must file a brief with opposing legal arguments, a response to the movant's proposed findings of fact and evidentiary materials to support the factual propositions. *See Procedure*, II.A.,

1-3; *Helpful Tips*, no. 2.  To dispute a fact proposed by the movant, the respondent must state his version of the fact and cite to evidence in the record that supports it.  *Procedure*, II.B.

Retzlaff, however, did not file any response to defendants' proposed findings of fact and did not file any proposed facts of his own.  Retzlaff did docket some evidence in the form of depositions and declarations, but the information contained in these documents is not always consistent and it is unclear which of defendants' proposed facts Retzlaff disputes and which he believes to be the accurate version of the relevant events.  The court warned the parties that:

> The court will not search the record for factual evidence.  Even if there is evidence in the record to support your position on summary judgment, if you do not propose a finding of fact with the proper citation, the court will not consider that evidence when deciding the motion.

> *Helpful Tips*, no. 2.

As a result, I am accepting defendants' properly proposed facts as undisputed.  *Procedure*, II.C; *Helpful Tips*, no. 3 ("A fact properly proposed by one side will be accepted by the court as undisputed unless the other side properly responds to the proposed fact and establishes that it is in dispute"); *Hendrich v. Board of Regents of the University of Wisconsin System*, 274 F.3d 1174, 1177-77 (7th Cir. 2001) (upholding this court's local rules adopting moving party's proposed findings of fact when non-moving part fails to respond properly).

Turning to the merits of defendants' summary judgment motion, defendants contend that summary judgment should be granted on all three parts of Retzlaff's claim:  (1) the traffic stop was illegal because defendant Smith lacked reasonable suspicion to stop Retzlaff's van; (2) the detention was illegal because Smith lack reasonable suspicion to detain him after the stop; and (3) Retzlaff's  arrest was illegal because Smith lacked probable cause to arrest him.  Aside

2

from arguing that the facts do not support Retzlaff's claim, defendants contend that Smith is entitled to qualified immunity.

With respect to Retzlaff's claims that the detention and arrest were unlawful, Retzlaff concedes in his response to defendants' motion for summary judgment that defendant Smith is entitled to qualified immunity regarding these claims. Plf.'s Resp. Br., dkt. 19, at 9-10. I understand this concession to mean that Retzlaff has abandoned his claims with respect to the detention and arrest. *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop*, 991 F.2d 1249, 1258 (7th Cir. 1993) (ruling the summary judgment arguments not responded to are conceded and waived); *see also Bleichner v. Spies Painting and Decorating, Inc.*, 2009 WL 281145, *4 (W.D. Wis. 2009) (ruling that legal issues raised in summary judgment that either are explicitly conceded or not responded to are waived). Retzlaff's decision not to pursue these claims is logical: the undisputed facts show that defendant had reasonable suspicion to detain him and probable cause to arrest him.

Remaining for analysis is the initial stop. Defendant Smith is entitled to summary judgment because he had probable cause to stop Retzlaff for speeding based on Smith's visual estimation and radar reading of Retzlaff's speed. Retzlaff named the City of Cumberland as a defendant solely because of its obligations to indemnify defendant Smith under Wis. Stat. § 895.46. Because defendant Smith is not liable to Retzlaff, I will grant summary judgment as to Retzlaff's claim against the City of Cumberland also.

From defendants' proposed findings of fact, I find the following facts to be material and undisputed:

UNDISPUTED FACTS

On January 5, 2007, around 11:30 p.m., plaintiff Jeffrey Retzlaff was driving a gray van in the City of Cumberland.  Nicole Bearheart was in the front passenger seat of the van. Defendant John Smith, a law enforcement officer who has been employed by the City of Cumberland since 2003, was on duty in a patrol car that night.  At this point in his career, Smith had four years' experience visually estimating the speed of vehicles.  Smith's patrol car had a "Kustom Doppler" radar unit mounted on the dashboard that Smith used to detect the speed of vehicles.  Smith had four years experience using the radar unit.  The radar unit had been certified for accuracy and Smith had confirmed its accuracy with a tuning fork before starting his shift.

At approximately 11:30 p.m., Smith saw Retzlaff's van make a right turn onto Eighth Avenue about one block away from where Smith was patrolling.  Smith did not know that Retzlaff was the operator of the van.  Eighth Avenue has a posted speed limit of 25 MPH. Officer Smith visually estimated Retzlaff's van to be traveling faster than 25 MPH.  Smith activated his radar unit's speed measuring function.  The radar unit indicated that Retzlaff's vehicle was traveling 36 MPH.  Smith "locked-in" his radar unit at 36 MPH, which caused the machine to display a flashing, red number "36."  Smith followed and monitored Retzlaff's van for a few blocks and then activated his emergency lights to initiate a traffic stop.  Retzlaff stopped.  His van had Minnesota license plate number NXB364.  Smith called in the plate and determined that it was registered to Reginald Greyeagle.

Smith approached the van, asked Retzlaff for his license and registration and told Retzlaff that he had stopped him for speeding.  Retzlaff told Smith that he and the passenger Nicole

4

Bearheart thought the speed limit was 35 miles per hour. Retzlaff did not ask to see the radar unit's readout.  Retzlaff handed Smith his license, which listed Retzlaff's address as 2714 Bayshore Drive, La Crosse, Wisconsin.  Retzlaff told Smith that he had moved two months ago and therefore, the address displayed on his driver's license was not current.  Retzlaff told Smith that he had owned the van for two months and had not yet registered or obtained legal title to the van.  Retzlaff could not produce proof of ownership.

As Smith was writing Retzlaff's speeding ticket, he saw Retzlaff reach and twist to his right, behind the seat.  Smith walked to the driver's door and saw Retzlaff move his right hand back in the direction of the rear of the van to push two 12-ounce soda cans and the neck of a clear glass bottle.  Smith asked Retzlaff what he was doing and Retzlaff said he was "straightening the van" because "the van was a mess."  Smith saw that the clear glass bottle was a malt beverage bottle appearing to contain alcohol.

Smith told Retzlaff to step out of the van and he asked if he could check Retzlaff for weapons.  Retzlaff responded "yes."  Smith patted him down but felt no weapons.  Smith then performed a consent search of the van and found an open 12-ounce bottle of Smirnoff alcohol with approximately one ounce of alcohol within it.   Behind the driver's seat Smith found an open, 12-ounce can of Bud Light containing beer.  Retzlaff's passenger, Bearheart, admitted that *she* had been drinking.  As Smith was retrieving the open alcohol containers, he saw marijuana leaves on the center of the dashboard.  Smith showed the leaves to Retzlaff and Bearheart and told them it was marijuana.   Retzlaff said he did not know why there was marijuana on his dashboard; Bearheart said the marijuana belonged to a friend.   Smith noticed that Retzlaff's eyes were red.  Smith had training and experience interacting with impaired people as a

5

paramedic and as a police officer, as well as training and experience detecting motorists impaired by drugs and alcohol, identifying drugs, and administering field sobriety tests.  Officer Smith knew that red or bloodshot eyes may be a symptom of impairment.

Smith administered three standardized field sobriety tests to Retzlaff: the horizontal gaze nystagmus (HGN) test, the "walk-and-turn" test, and the "one-leg stand" test.  Retzlaff failed the walk-and-turn test.  During the HGN and one-leg stand tests, Smith observed signs indicating that Retzlaff may have been intoxicated.  Smith administered a preliminary breath test on Retzlaff that was negative for the presence of alcohol.  Smith arrested Retzlaff, citing him for possession of marijuana, speeding and operating with a detectable amount of a restricted controlled substance.  Smith placed Retzlaff in the back of his squad car, where Retzlaff had a clear view of Smith's radar unit.

OPINION

A plaintiff pursuing a claim under 42 U.S.C. § 1983 must show that a government official, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.  *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978); *Estate of Sims ex. rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).  Retzlaff contends that defendant Smith violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Defendant Smith responds that he did not violate Retzlaff's Fourth Amendment rights and that he is entitled to qualified immunity.

Law enforcement officers engaged in the performance of their duties may be entitled to qualified immunity and "shielded from liability for civil damages insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

## I.     The Traffic Stop

Although there is support for the proposition that a law enforcement officer may stop a car if the officer has reasonable suspicion that the driver has violated the law,[1] the more commonly used standard is that a traffic stop is constitutional if the officer had probable cause to believe that the driver has violated any traffic law. *Woods v. City of Chicago*, 234 F.3d 979, 993-94 (7th Cir. 2000), citing *Whren v. United States*, 517 U.S. 806, 817-18 (1996). This is the standard that defendants invoke in support of their motion, *see* Dfts. Br., dkt. 13, at 4-7, so it is the standard the court will employ in deciding their motion. "Contrary to what its name might seem to suggest, probable cause demands even less than 'probability.' It requires more than bare suspicions but need not even be based on . . . a showing that the officer's belief is more likely true than false." *Woods*, 234 F.3d at 996.

Smith contends he had probable cause to stop Retzlaff's van because Smith visually estimated that Retzlaff was speeding and his radar gun showed that Retzlaff was driving 36 MPH in a 25 MPH zone. Retzlaff acknowledges that "a police officer's good faith, reasonable estimate of . . . speed of a vehicle, can provide a lawful basis for a traffic stop even if the officer eventually turns out to be wrong and the driver stopped was actually operating within the law." Plf.'s Br., dkt. 19, at 4-5. But Retzlaff contends that here, Smith's estimation of Retzlaff's speed

---

[1] *See Delaware v. Prouse*, 440 U.S. 648, 662-663 (1979); *United States v. Riley*, 493 F.3d 803, 808-9 (7th Cir. 2007); *Valance v. Wisel*, 110 F.3d 1269, 1276-77 (7th Cir. 1997).

was *not* a good faith, reasonable estimate but instead was fabricated and motivated by racial bias. Retzlaff's accusations of lies resulting racial animus are alarming, but they are based on speculation and unsupported inferential leaps, and therefore unpersuasive.

First, Retzlaff has proposed no findings of fact with respect to the traffic stop. Thus, if I accept all of defendants' proposed facts as true, the only possible inference is that defendant Smith reasonably believed Retzlaff was speeding based on his visual estimation and radar reading and therefore had probable cause to stop Retzlaff.

Second, even if this court were to recognize–as defendants have–that Retzlaff disputed in his deposition and declaration whether he was speeding, there still is no basis to infer, as Retzlaff urges, that defendant Smith did not reasonably believe Retzlaff to be speeding. In determining probable cause, the issue is not whether Retzlaff was actually speeding, it is whether Smith reasonably believed that Retzlaff was speeding. *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (courts "need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating."); *see also United States v. Cashman*, 216 F.3d 582. 586-87 (7th Cir. 2000) (officer's estimate of the fact undergirding a violation does not need to be "perfectly accurate;" pertinent question is whether it was reasonable for the officer to believe that a violation had occurred); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) ("whether [the motorist] would have been convicted of a violation in a traffic court" is not the issue). Thus, a motorist's claim that he did not actually violate a traffic regulation cannot establish that the officer who stopped him lacked probable cause. Rather, a motorist must go further and demonstrate that the officer's belief that a

8

violation occurred not only was incorrect, but objectively unreasonable. Retzlaff has not done this.

Retzlaff attempts to place this issue in dispute by arguing that a jury could easily conclude that defendant Smith was lying about his visual estimation and the reading on his radar unit because Smith lied about everything that happened that night, including Retzlaff's performance on the field sobriety tests, whether Retzlaff's eyes were red and defendant's true motivation for the stop. In most situations, a police officer's testimony that he believed a driver to be speeding based on his visual estimation and radar reading would be sufficient to establish probable cause and allow a police officer to stop the driver. *E.g.*, *Homes v. McGuigan*, 184 Fed. Appx. 149, 150-51 (3rd Cir. 2006) (unpublished) (ruling that despite plaintiff's claim that she was not speeding, the officer who stopped her was entitled to summary judgment on grounds of qualified immunity because plaintiff could not refute that the officer's speed-measuring device showed that she was traveling 43.5 MPH in a 25 MPH zone); *Vajk v. Galvin*, 2000 WL 709155, *3 (N.D. Ill. April 21, 2000) (ruling that despite plaintiff's claim that he was not speeding and that the officer was incompetent and inadequately trained on radar usage, the officer was entitled to qualified immunity based on his visual and radar assessments that the plaintiff was speeding); *Wysinger v. White*, 1998 WL 229558, *2 (D. Kan. April 29, 1998) (ruling that despite plaintiff's claim that he was not speeding, defendant officer was entitled to summary judgment in his favor because "[a] radar detector may provide a reasonable suspicion that a speeding violation has occurred."); *Gilmore v. Gregg*, 1993 WL 100209, *6 (D. Kan. March 20, 1996) (officer entitled to qualified immunity for traffic stop where plaintiff denied speeding but plaintiff could not dispute that officer had "paced" plaintiff at driving in excess of speed limit).

Even so, there may be a situation in which the plaintiff driver has presented facts that would allow a jury to infer that the police officer was lying about his visual estimation or radar reading. For example, in *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009), a police officer stopped a driver, alleging that his radar gun detected the driver was traveling 50 MPH in a 40 MPH zone. The driver alleged that she was certain that she was not speeding because she had been using her vehicle's cruise control function at the time of the stop. *Id.* The Court of Appeals for the Fifth Circuit concluded that despite plaintiff's protests that she was driving within the speed limit, the "[u]ncontradicted testimony that [an officer's] radar gun indicated that [plaintiff] was speeding" is normally enough to establish probable cause. *Id.* However, in *Deville*, the driver also had produced evidence of the defendant police officer's history of problematic arrests, falsified charges, citizen complaints and that multiple supervisors had requested his resignation. *Id.* at 165-66. Further, at the time of the stop, the plaintiff had asked to see the radar gun and the police officer refused to produce it. *Id.* at 166. The court of appeals concluded that in such a situation, the plaintiff had adduced evidence that would allow a reasonable jury to conclude that the police officer did not have probable cause to stop the driver. *Id.*

Retzlaff's case is easily distinguishable from *Deville*. Here, Retzlaff has proposed no facts to support his argument that defendant Smith lacked probable cause to stop him. There are no facts to dispute that defendant Smith had training and experience in using visual estimation and radar detection to determine the speed of vehicles, that Smith's radar detection unit had been calibrated and certified as accurate, that he visually estimated Retzlaff to be speeding, that his radar unit recorded Retzlaff's speed at 36 MPH and that Retzlaff and his passenger Nicole

Bearheart told Smith that they thought the speed limit was 35 MPH.  Further, although Retzlaff contends that Smith's credibility is undermined because he "fabricated the facts" regarding the events of January 5, including Retzlaff's appearance and performance on the field sobriety tests, Retzlaff has proposed no facts to dispute that his eyes were red[2] or that he had difficulty with the tests.[3]  Likewise, Retzlaff has proposed no evidence to suggest that Smith fabricated evidence regarding the open containers of alcohol or the marijuana in Retzlaff's van.

Finally, Retzlaff has proposed no facts to support his contention that a jury could believe that defendant Smith's decision to stop Retzlaff was motivated by racial bias arising from a stereotypical assumption that "a young white man living with a Native American woman on the reservation would most likely be a drug user or seller and probably high on something right at that moment."  Plf.'s Br., dkt. 19, at 8.  In his brief, Retzlaff points to one tangential incident to support this argument: in December 2006, Retzlaff's parents went to the Cumberland police for help finding Retzlaff on the reservation.  An officer at the police department (not defendant Smith) stated that "drug and alcohol situations were bad on the reservation and that the only reasons a white guy would be on the reservation would be either to use or sell drugs."  Decl. of Lee Retzlaff, dkt. 16, ¶ 9.  That officer called the tribal police who said that Retzlaff had been driving a gray van recently.  *Id.*, at ¶ 12.  From this incident, Retzlaff deduces that defendant Smith knew that Retzlaff was living on the reservation with a Native American woman and

---

[2]  Retzlaff's argument that defendant Smith lied about his red eyes is contradicted by Retzlaff's own testimony.  In his deposition, he testified that he told defendant Smith, "My eyes are red, they've always been red."  Retzlaff Dep., dkt. 10, at 27.

[3]  In his deposition, Retzlaff testified that he had trouble with the "walk-and-turn" test because he was confused about the instructions, not because he was intoxicated.  Retzlaff Dep., dkt. 10, at 27.  With respect to the HGN or one-leg stand test, Retzlaff's version of the tests is not in the record and there is nothing to support Retzlaff's argument that Smith fabricated the results of either test.

drove a gray van and that defendant Smith shared the other officer's belief that a young white man living with a Native American woman on the reservation would most likely be a drug user or seller.

Retzlaff did not propose any of the facts related to his parents' visit to the Cumberland police department in support of his summary judgment response brief. However, even if Retzlaff had proposed such facts, they would not support his proffered conclusions. There is no fact in the record, proposed or not, establishing that *defendant Smith* was aware that Retzlaff was driving a gray van or that he was involved with a Native American woman. There are no facts suggesting that Smith even was aware of Retzlaff's parents' visit to the police department. There are no facts suggesting that Smith had any knowledge of the other officer's comment regarding drugs on the reservation or that Smith held biased views regarding drug use among Native Americans.

It is true that at summary judgment, the court must "consider the evidentiary record in light most favorable to the plaintiff and draw all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). However, summary judgment is appropriate if "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Here, Retzlaff attempts to create a factual dispute with a bridge of speculation. "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995). The only evidence in the summary judgment materials shows that defendant Smith possessed an objectively reasonable belief that Retzlaff was speeding based on his visual estimation and radar reading,

and therefore did not violate Retzlaff's Fourth Amendment rights by stopping him.  Because

there was no Fourth Amendment Violation, defendants are entitled to summary judgment.


ORDER

It is ORDERED that:

(1)     The motion for summary judgment filed by defendants John Smith and the City
        of Cumberland, dkt. 12, is GRANTED.

(2)     The clerk of court is directed to enter judgment for defendants and close this case.

        Entered this 2nd day of May, 2010.

                        BY THE COURT:

                        /s/

                        STEPHEN L. CROCKER
                        Magistrate Judge